# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO. 5:17-CV-00039-KDB-DCK

| | |
|---|---|
| MIKE BENDFELDT, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> WINDOW WORLD, INC., <br><br> Defendant. | **ORDER** |

THIS MATTER is before the Court on Defendant Window World, Inc.'s ("Window World") Motion for Summary Judgment (Doc. No. 98). The Court has carefully considered the motion and the parties' briefs and exhibits, which argue at length Defendant's numerous alleged grounds for the entry of summary judgment. However, the Court finds that it need reach and decide only one of those grounds to rule on the motion. Years before this case was filed, the corporate Plaintiffs sold the claims raised in this action when they sold the assets of their businesses to unrelated third parties. Therefore, Plaintiffs do not own the asserted claims and thus have no right to pursue them as a matter of law. Accordingly, the Court will GRANT the motion and enter summary judgment in favor of Window World.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019).

A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II.     FACTS AND PROCEDURAL HISTORY

Window World is an exterior home products company, which has numerous franchised (formerly licensed) stores across the United States. *See* Doc. No. 100-1 (Kilby Dep. 17:6). The corporate Plaintiffs in this action are Nebraska corporations that, beginning in 2001, owned "Window World" stores in Nebraska, Iowa, Colorado, South Dakota, North Dakota, Kansas, Washington, Oregon and Nevada. *See* Doc. Nos. 100-2-100-20.  The individual Plaintiff, Mike Bendfeldt ("Bendfeldt"), was an officer and the owner-operator of these corporations. *See* Doc. No. 100-21 at pp.15-17.  As Window Works licensees/franchisees, the stores purchased exterior home improvement products such as vinyl windows, doors and siding from Window World-approved vendors and used the Window World trade name and trademarks in selling and installing the products in a designated exclusive geographic trade area. *See generally* Doc. Nos. 100-2–100-20; 100-21 (Bendfeldt Dep. 152:16-153:11; 241:4-14; 344:17-346:9; 543:5-19).

In early 2011, Bendfeldt began negotiating to sell his Window World businesses in preparation for a divorce. Doc. No. 100-21 (Bendfeldt Dep. 669:25-670:9; 675:12-20). Ultimately, by January 2, 2013, all but one of the Plaintiff Corporations[1] had sold all of their assets by means of virtually identical Asset Purchase Agreements ["APAs"] to unrelated third parties. *Id.* 680:4-681:2; Doc. Nos. 102-1-102-10.

Sections 1.1(g) and 1.1(j) of each APA provided, respectively, that the assets being sold included "[s]eller's rights in all oral or written contracts, agreements, and indicia or authority . . ." and "[a]ll intangible rights and property of the seller[.]". *Id.* at ¶¶ 1.1(g) & 1.1(j)]. Section 1.2 of each APA provided that any assets excluded from the sales were listed on Schedule 1.2. That schedule, for most of the APAs, identified the excluded assets as "none," and none of the schedules listed claims or rights against Window World as excluded assets. *Id.* at Schedule 1.2. However, Plaintiff Bendfeldt alleges that the Plaintiff corporations orally assigned their claims against Window World to him just before this action was commenced in October of 2015, two years and nine months after the last APA selling all assets to the third-party purchasers. Doc. No. 100-21 (Bendfeldt Dep. 688:5-689:21); Doc. Nos. 102-11, 102-12.

Bendfeldt and his ex-wife, Betty Muhr-Bendfeldt, filed this action against Window World and Associated Materials, LLC ["AMI"] in the United States District Court for the District of Nebraska on October 16, 2015, asserting claims individually and as alleged assignees of thirteen dissolved non-party corporations. *See* Doc. No. 1. On January 4, 2017, the Nebraska Court transferred the action to this Court, concluding that transfer was required by the forum selection

---

[1] The one exception was a Window World of North Dakota store, which had minimal sales in the years prior to closing in 2012. Doc. No. 86 at ¶ 25; Doc. No. 100-21 (Bendfeldt Dep. 678:17-21); Doc. No. 101-18.

and choice of North Carolina law clauses in the licensing contracts and the other factors considered under 28 U.S.C. §1404(a). *See* Doc. No. 48.

On September 26, 2017, this Court entered an order dismissing four of the seven claims in the Amended Complaint, including all claims against AMI and portions of the claims against Window World. Doc. Nos. 69, 70. A Second Amended Complaint was filed on September 7, 2018, which added the corporations as Plaintiffs and dropped Betty Muhr-Bendfeldt as a Plaintiff. *See* Doc. No. 86. In that operative pleading, Plaintiffs assert claims of fraudulent misrepresentation / concealment, breach of contract and negligent misrepresentation, all arising out of the operation of the Plaintiff corporations' Window World businesses and their working relationship with Defendant. *Id.* at ¶¶ 69-92. Defendant has now moved for summary judgment on all claims. Doc. No. 98.

### III. DISCUSSION

In support of its summary judgment motion, Defendant argues, in part,[2] that the corporate Plaintiffs sold their rights to sue Defendant when they executed the APAs with third parties. Doc. No. 99 at 23-25. In response, Plaintiff Bendfeldt claims that he was not a party to the APAs so his claims for breach of contract "remain with him," and that a claim for breach of the implied covenant of good faith and fair dealing are personal in nature and could not be sold. Bendfeldt further claims that his fraud and negligent misrepresentation claims are personal in nature and therefore also could not be sold. *See* Doc. No. 103 at 20.

---

[2] The bulk of Defendant's (and Plaintiffs') summary judgment argument is directed at the operation of the parties' business, primarily the issue of whether the prices and circumstances under which Plaintiffs bought windows from Window World approved vendors satisfied the Defendant's contractual and other legal obligations. Because the Court finds that Plaintiffs no longer own or control the claims asserted in this action, the Court need not and does not reach this issue or the other issues raised by Defendant in support of its motion.

5

Pursuant to the APAs, Nebraska law governs the contractual question of whether the claims in this case were sold with the other assets of the corporate Plaintiffs. *See, e.g.*, Doc. No. 102-1 at ¶12.5. Under Nebraska law, as with the law of other jurisdictions, the Court's interpretation of the parties' APAs must, when possible, enforce the intent of the parties as reflected in the language of the contract itself. *See Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 423 (Neb. 2010) ("A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include."). Accordingly, "[a] court interpreting a contract must first determine as a matter of law whether the contract is ambiguous." *Id.* "[A] contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Id.* Only when a court has determined that a contract is ambiguous can it "next turn to its meaning." *Id.*

Viewing the APAs in the light most favorable to Plaintiffs, the Court still readily finds that the APAs are unambiguous as to the sale of the Plaintiffs' claims against their former licensor / franchisor Window World. The APAs state that upon the closing date, the Plaintiff corporations "shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, certain assets of Seller." Doc. No. 102-1 at 2. This clause is followed by a colon and a list of the "certain assets" to be sold, assigned, transferred, and delivered to the third parties. Doc. No. 102-1 at 2. Both "Seller's rights in all oral or written contracts, agreements, and indicia of authority" and "[a]ll intangible rights . . . of Seller" are included in that list of assets. Doc. No. 102-1 at 2. Indeed, the APAs acknowledge the parties' ability to exclude any assets by containing an express opportunity to describe any excluded assets, but then do not exclude any claims against Defendant. Doc. No. 102-1 at 3, 14.

"[A] contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract." *Kluver v. Deaver*, 714 N.W.2d 1, 5 (Neb. 2006). The APAs indicate that all intangible assets that Plaintiff Corporation owned at the time of the sale were sold to the third-party buyers. To ignore the express language in the APAs and exclude from the sale the corporate Plaintiffs' rights to sue Defendant would be to rewrite the both the included assets clause and the exclusion clause, and would fail to give effect to every part of the contract—particularly when Plaintiff does not point to another possible interpretation of that contract. *See Davenport Ltd. P'ship*, 780 N.W.2d at 423; *Kluver*, 714 N.W.2d at 5. Because the APAs are not susceptible to two different and reasonable interpretations, the contract must be construed as written: that is, the corporate Plaintiffs, through the APAs, sold any existing or potential claims against Defendant to the third party buyers.

As noted, Plaintiff Bendfeldt argues that he was not a party to the APAs; therefore, his claims against Defendant could not have been sold. First, the Second Amended Complaint makes clear that all of Plaintiffs' claims arise from alleged contractual or legal duties owed to the Window World licensees / franchisees or are related to the corporate Plaintiffs' services or "purchases of products or supplies." *See* Doc. No. 86 at ¶¶ 71, 78-79 (alleging breach of "the duty owed to Plaintiffs under the foregoing provisions of the Licensing Agreements" and breach of "a duty of good faith and fair dealing under the Licensing Agreements"), 62, 84 ("*Plaintiffs* had to hire additional office personnel in order to provide such services" and "*Plaintiffs* agreed to provide services") (emphasis added), 91 (Defendant "breached its duty of reasonable care to Plaintiffs by providing false information concerning Plaintiffs' franchise relationship …."). Further, there is no dispute that the corporate Plaintiffs, not Bendfeldt personally, were the Window World licensees / franchisees. *See* Doc. Nos. 100-2–100-20; 100-21 (Bendfeldt Dep. at p. 17). Therefore,

although Bendfeldt signed both the Window World license agreements with the corporate Plaintiffs and the APAs on behalf of the corporations, he was not a legal party to either agreement so the claims asserted in this action belonged to the corporate Plaintiffs as Window World's licensees / franchisees and were among the assets sold in the APAs.

Finally, Bendfeldt asks the Court to find that the asserted claims are personal in nature and therefore unassignable. The Court disagrees. First, Plaintiff cites to North Carolina law rather than Nebraska law, which governs the APAs. Doc. No. 103 at 20; Doc. No. 102-1 at 10. Thus, Plaintiff has not supported his argument with relevant authority. Second, such claims are in fact assignable in Nebraska. Although Nebraska law does not permit assignments for matters of personal trust or confidence, or for personal services, *see Earth Sci. Labs., Inc. v. Adkins & Wondra, P.C.*, 523 N.W.2d 254, 257 (Neb. 1994), whether a claim is personal such that it cannot be assigned "is a question to be resolved by ascertaining the intent of the parties to the transaction." *Schupack v. McDonald's Sys., Inc.*, 264 N.W.2d 827, 830 (Neb. 1978) (holding that a right of first refusal was personal in nature and therefore could not be assigned).

Plaintiff has not pointed to any authority or fact showing that these claims are ones of personal trust or confidence or for a personal service. In fact, the record shows that the intent of Plaintiff in executing the APAs on behalf of the corporate Plaintiffs was to avoid involving those assets in his divorce proceeding with his then-wife. Doc. No. 100-21 at 191. Moreover, Nebraska has expressly rejected the contention that a claim for fraud is personal and therefore unassignable merely because it is fraud. Rather, it is the intent of the parties at the time of contracting that evidences its personal nature. *See Eli's, Inc. v. Lemen*, 591 N.W.2d 543, 553 (Neb. 1999) ("[T]he fact that the assignee seeks to recover under a theory of fraudulent transfer does not alter the nature of the underlying contractual indebtedness."). As discussed above, Plaintiff has clearly alleged

8

that Defendant's challenged conduct was related to the ongoing *business* relations among the parties rather than any matters of *personal* trust or confidence or for a personal service. Thus, the claims were assignable and sold in accordance with the terms of the APAs.

In sum, under Nebraska law, the APAs unambiguously evidence that the corporate Plaintiffs sold their claims against Defendant to third parties and therefore they can neither pursue those claims on their own nor could they assign those claims to Plaintiff Bendfeldt years later. Accordingly, this Court will grant Defendant's Motion for Summary Judgment on all claims.[3]

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 98) is **GRANTED; and**
2. The Clerk is directed to enter summary judgment in favor of Defendant and close this matter in accordance with this Order;

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 25, 2020

Kenneth D. Bell
United States District Judge

---

[3] Although one corporate Plaintiff, the Window World store in North Dakota, did not execute an APA, Doc. No. 100-21 at 195, there is no dispute that this store had minimal sales in the years prior to its closing in 2012. Therefore, any claim from that store, standing alone, would plainly be insufficient to support the asserted Federal diversity jurisdiction under 28 U.S.C. §1332, even if that Plaintiff's claims were timely. *See* Doc. No. 86 at ¶¶ 5, 25; Doc. Nos. 100-21, 101-18; Doc. No. 99 at 21-23.